Minute Order Form: (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 7026 | **DATE** | 1/8/2002 |
| **CASE TITLE** | USA, ex rel. Terry Harris vs. Roger D. Cowan | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Petitioner's claim for habeas relief is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | 4 | | **Document Number** |
| | No notices required. | | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | JAN 0 9 2002 | | |
| | Notified counsel by telephone. | | | date docketed | | |
| | Docketing to mail notices. | | | | | 77 |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | 1/8/2002 | | |
| | | | | date mailed notice | | |
| ETV | courtroom deputy's initials | | Date/time received in central Clerk's Office | ETV | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA,  )
ex rel., TERRY HARRIS,      )
                                     )

        Petitioner,         )

                                   )

        v.                  )   No. 96 C 7026

                                   )

ROGER D. COWAN, Warden,     )   Judge Rebecca R. Pallmeyer
Menard Correction Center,   )
                                   )

        Respondent.         )

DOCKETED

JAN 0 9 2002

## MEMORANDUM OPINION AND ORDER

On April 7, 1986, following a jury trial in the Circuit Court of Cook County, Petitioner Terry Harris was found guilty of the 1984 murder, aggravated criminal sexual assault, and aggravated kidnapping of twenty-four-year-old Emma Hopkins in Chicago, Illinois. Now incarcerated at the Menard Correctional Center in Chester, Illinois, Petitioner brings this petition for habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner argues that: (1) he was denied his Sixth and Fourteenth amendment rights to effective counsel because his attorneys failed to develop and present significant mitigating evidence at his capital sentencing hearings; and (2) his Fifth Amendment double jeopardy and Fifth and Fourteenth Amendment due process rights were violated because the trial judge permitted the jury to consider a felony murder count based on a charge for which the judge had previously directed an acquittal. Harris's initial petition was assigned to Judge Shadur, who appointed counsel on June 16, 1997, and after investigation, counsel filed an amended petition on February 7, 2001. For the following reasons, the petition is denied.

# FACTUAL BACKGROUND[1]

Petitioner and the victim, Emma Hopkins, became acquainted while working at the same service station in Chicago, Illinois. *People v. Harris*, 132 Ill. 2d 366, 372, 547 N.E.2d 1241, 1243 (1989). Petitioner worked as a security guard, and Ms. Hopkins, as a cashier. (*Id*; 547 N.E.2d at 1243.) On the afternoon of October 28, 1984, as Ms. Hopkins' shift came to an end, she agreed to give Petitioner a ride to a nearby location. (*Id.*) In a statement he made to authorities two days later, Petitioner reported that, as he and Ms. Hopkins were driving, he confided that he had learned earlier that day that his wife had leukemia. (*Id.* at 376, 547 N.E.2d at 1245.) When Ms. Hopkins saw how upset he was, Petitioner recalled, she suggested they go somewhere to talk, and he suggested a forest preserve on the southeast side of the city. Petitioner told authorities that he and Ms. Hopkins talked in the car until the forest preserve closed, at which time they drove to a factory area. (*Id.* at 377, 547 N.E.2d at 1245.)

In his confession, Petitioner asserted that, while parked at the factory, he and Ms. Hopkins engaged in consensual sexual relations in the back seat of her car. He said that after they had sexual relations, they moved back to the front seat. (*Id*; 547 N.E.2d at 1245.) As Petitioner was moving the revolver he carried in his capacity as

---

[1]    A federal court reviewing a petition for writ of habeas corpus under 28 U.S.C. § 2254 presumes the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1); *see also Sumner v. Mata*, 449 U.S. 539, 547, 66 L. Ed. 2d 722, 101 S. Ct. 764 (1981). A petitioner has the burden of establishing by convincing evidence that a state court's factual determinations are erroneous. *See U.S. ex rel Green v. Greer*, 667 F.2d 585, 589 n.6 (7th Cir. 1981). Harris does not challenge the Illinois Supreme Court's factual findings in his petition. The court, therefore, adopts the facts set forth by the Illinois Supreme Court in *People v. Harris*, 132 Ill. 2d 366, 547 N.E.2d 1241 (1989).

a security guard to the glove compartment, he said, Ms. Hopkins tried to take the gun from him to examine it. Petitioner said that he tried to stop Ms. Hopkins from taking the gun, but as they struggled for it, the gun accidentally discharged, piercing the car floor. According to Petitioner, this series of events so upset him that he strangled Ms. Hopkins. (*Id.* at 377; 547 N.E.2d at 1245.) Petitioner dragged Ms. Hopkins' partially clothed body from the car and hid it under a storage tank on the factory premises, where workmen discovered it the following morning. (*Id.* at 372, 377; 547 N.E.2d at 1243, 1245.) Petitioner then drove away in Ms. Hopkins' car. (*Id.* at 377; 547 N.E.2d at 1245.)

The morning after Ms. Hopkins' death, Petitioner left a message on her answering machine advising that he was finished using the car and thanking her for permitting him to use it. (*Id.* at 374; 547 N.E.2d at 1244.) Petitioner explained to authorities in his confession that he left this message so that he would not be suspected of killing Ms. Hopkins. (*Id.* at 376; 547 N.E.2d at 1245.) Police arrested Petitioner later that day when Ms. Hopkins' brother and a friend saw Petitioner driving Ms. Hopkins' car. (*Id.* at 374; 547 N.E.2d at 1244.) Shortly thereafter, on October 30, Petitioner gave his formal statement to state authorities in which he confessed to murdering Ms. Hopkins. (*Id.* at 375; 547 N.E.2d at 1245.)

At trial, the state presented physical and laboratory evidence confirming Petitioner's role in Ms. Hopkins' murder. (*Id.* at 377-78; 547 N.E.2d at 1246.) Among other facts, the evidence established that Ms. Hopkins' purse and work smock were found in the trunk of her car, and that a viscous substance on the floor of the car

3

matched a similar substance found near the victim's body. The state's evidence also established that four latent fingerprints found in Ms. Hopkins' car matched Petitioner's fingerprints. In addition, the evidence showed that semen discovered on her camisole, which was found under the back seat of her car, and swabs of the victim's vagina made during the autopsy, matched Petitioner's seminal material. (*Id.* at 378; 547 N.E.2d at 1246.) The Cook County deputy chief medical examiner testified that Ms. Hopkins died of strangulation, evidenced by numerous internal hemorrhages in her neck. He testified, further, that the walls of her pelvis exhibited hemorrhages and other injuries that suggested she was the victim of a sexual assault, although on cross-examination he acknowledged that such injuries could also result from vigorous sexual intercourse. (*Id.* at 377-78; 547 N.E.2d at 1246.)

At the close of the state's case in chief, the trial judge directed a verdict for Petitioner on a count charging him with armed robbery of Ms. Hopkins' purse. (*Id.* at 379-80; 547 N.E.2d at 1247.) The trial judge instructed the jury on the following offenses: felony murder predicated on armed robbery; intentional murder; knowing murder; felony murder predicated on aggravated criminal sexual assault; and aggravated kidnapping. Using a general verdict form, to which Petitioner did not object, the jury found Petitioner guilty of murder, aggravated criminal sexual assault, and aggravated kidnapping.[2] (*Id.* at 392; 547 N.E.2d at 1252.)

After the return of the jury's verdicts, the State requested a capital sentencing

---

[2]     It is unclear from the record on what date Petitioner was convicted.

hearing. Petitioner waived his right to a jury at this hearing, and the trial judge sentenced him to death for the murder conviction.[3] (Id. at 379, 382; 547 N.E.2d 1247, 1248.) The trial judge also sentenced Petitioner to concurrent thirty-year prison terms for the aggravated criminal sexual assault and aggravated kidnapping convictions. (Id. at 382; 547 N.E.2d at 1248.)

Pursuant to his right as a capital defendant, Petitioner appealed directly to the Illinois Supreme Court. See Il. St. S. Ct. Rule 603. The Illinois Supreme Court affirmed the convictions on December 7, 1989, but vacated the death sentence, concluding that the sentencing judge had committed constitutional error by improperly relying on victim impact information. The court also vacated the sentences for the aggravated criminal sexual assault and aggravated kidnapping convictions because they exceeded the statutory maximum. (Id. at 398; 547 N.E.2d at 1255.)

Petitioner's second sentencing hearing involved a different judge, different counsel, and different prosecutors than the first sentencing hearing. (Petitioner's Amended Habeas Petition, (hereinafter, "Petition") at 5.) Although the state again sought the death penalty, the judge sentenced Petitioner to natural life imprisonment for murder, with concurrent terms of thirty years for aggravated sexual assault and

---

[3]    The record does not clarify the date on which petitioner was originally sentenced, nor is the court certain of the date of re-sentencing, though it must have occurred between December 7, 1989, the date his first sentence was vacated, and August 10, 1992, the date the Illinois Appellate Court dismissed Petitioner's appeal of his second sentence for want of prosecution. (Exhibit G, Exhibits to Answer, People v. Harris, 132 Ill. 2d 366, 547 N.E.2d 1241 (1989); Exhibit H, Exhibits to Answer, Order of Illinois Appellate Court Dismissing Appeal of Terry L. Harris.)

fifteen years for aggravated kidnapping. *Id.*

Petitioner, proceeding *pro se*, filed a post-conviction petition on August 24, 1993,

in which he made numerous claims,[4] and requested court-appointed counsel. (*Id* at 6;

---

[4]    In his sixty-three page post-conviction petition, Petitioner raised numerous claims under the following general areas:

1. Violation of his Fifth, Sixth, and Fourteenth Amendment due process and equal protection rights at trial: Under this series of claims, Petitioner argued that, among other things, the kidnapping charges failed to clearly state an essential element of the offense. Petitioner argued that his due process rights were violated when the judge allowed the jury to consider the felony murder charge predicated on armed robbery after the judge had already delivered a directed acquittal on the armed robbery charge. Harris also claimed that the doctor's testimony at trial violated his rights, that he was denied a fair trial because the verdict forms used were improper and confusing, and that the judge denied his right to an effective closing argument.

2. Prosecutorial misconduct: These claims were based on a series of allegations, such as the prosecutor's dwelling on characteristics of the victim and her family during closing arguments and making inflammatory statements about Petitioner's character.

3. Prejudicial and improper jury instructions: Again, Petitioner claimed that the trial judge improperly allowed the jury to consider the felony murder charge predicated on armed robbery.

4. Ineffective assistance of counsel in violation of his Fifth, Sixth, and Fourteenth Amendment rights: Harris made some nineteen claims under the heading "Ineffective Assistance of Counsel." Among these claims were attacks by Harris on his trial counsel's failure to object to the indictment of felony murder predicated on armed robbery, the aggravated kidnapping indictment, the doctor's testimony regarding sexual assault, and the prosecutor's "dwelling" on characteristics of the victim and her family. Petitioner also claimed that his counsel on appeal was ineffective because she failed to raise various issues, including certain prosecutorial "misstatements," the prosecutor's having "dwelled" on defendant's character at trial, the ineffective assistance of Harris's trial counsel, and certain improper and prejudicial jury instructions at trial. Notably, Harris did not include his present claim that his counsel on appeal was ineffective for failing to present certain mitigating evidence at the sentencing phase of his trial.

Exhibit I of Exhibits to Respondent's Answer to Petitioner's Amended Petition for Writ of Habeas Corpus (hereinafter, "Resp. Exhibits").) The trial court declined to appoint counsel and, in a ruling from the bench, dismissed Petitioner's post-conviction petition on October 28, 1993, as frivolous and patently without merit. (Petition at 6; Exhibit J to Resp. Exhibits.) Petitioner appealed the dismissal to the Illinois Appellate Court, arguing that he had sufficiently raised the gist of a meritorious claim of ineffective assistance of counsel. (Exhibit K to Resp. Exhibits.) The Illinois Appellate Court affirmed the trial court's decision on February 13, 1996. (Exhibit N to Resp. Exhibits.) Petitioner petitioned for leave to appeal to the Illinois Supreme Court on April 1, 1996, but the court denied the petition on June 5, 1996. (Exhibit P to Resp. Exhibits.)

On November 26, 1996, Petitioner, proceeding *pro se*, filed this action. The initial petition was assigned to Judge Shadur, who appointed counsel to represent Petitioner on June 16, 1997. (Answer; Docket No. 22.) After reassignment to this court, Petitioner filed an Amended Petition for Writ of Habeas Corpus (hereinafter, "Petition") on February 7, 2001, in which he raises two arguments. First, Petitioner alleges that, at his re-sentencing hearing, he was denied the effective assistance of counsel, in violation of the Sixth Amendment, when counsel failed to develop and present four types of mitigating evidence: (a) Petitioner suffers from an organic brain dysfunction, including frontal-lobe dysfunction; (b) Petitioner has an IQ of 76; (c) shortly before the offense took place, Petitioner had learned that his wife had leukemia; and (d) Petitioner's childhood was violent and traumatic: he was placed in foster care as an infant and abruptly returned to his natural mother a few years later,

7

and later witnessed his stepfather shooting his then-pregnant mother several times with a pistol, resulting in the death of her unborn twins.

## DISCUSSION

Section 2254 of the Anti-Terrorism and Effective Death Penalty Act entitles a prisoner to a writ of habeas corpus if he is being held in prison pursuant to a state court judgment obtained in violation of the Constitution. 28 U.S.C. § 2254; *Williams v. Taylor*, 529 U.S. 362, 375, 120 S. Ct. 1495, 1504 (2000); *Lowery v. Anderson*, 225 F.3d 833, 838 (7th Cir. 2000). With respect to any claim that was adjudicated on the merits in state court proceedings, a federal court will not grant a writ of habeas corpus unless that state decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1) & (2); *Winters v. Miller*, No. 00-1125, 2001 WL 1620008, __ F.3d __ (7th Cir. Dec. 19, 2001); *Hough v. Anderson*, 272 F.3d 878, 889 (7th Cir. 2001). This court, however, will not address the merits of a habeas corpus petition unless the petitioner can show that he has exhausted his state remedies and avoided procedural default. *U.S. ex. rel. Bell v. Pierson*, 267 F.3d 544, 551 (7th Cir. 2001).

Habeas relief is only available to a petitioner who has exhausted his state remedies by presenting his claims fully and fairly to the state courts. 28 U.S.C. § 2254. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). In *O'Sullivan*, the Supreme Court explained that "[b]ecause the exhaustion doctrine is designed to give the state courts

8

a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." 526 U.S. at 845. In Illinois, "one complete round" is finished once the petitioner has presented his claims, whether on direct appeal or on post-conviction review, at each stage of the appellate process, up through and including the Illinois Supreme Court. *See id.* at 847-48.

## I.     Ineffective Assistance Claim

Petitioner's first claim is that he was denied the effective assistance of counsel due to counsel's failure to present certain mitigating evidence at the re-sentencing hearing. It is undisputed that Petitioner never raised this claim prior to filing this Petition. (Petition at 11.) In a post-conviction petition filed after his second sentencing hearing (the hearing at which he alleges he received ineffective assistance), Petitioner raised dozens of claims but made no mention of counsel's failure to present mitigating evidence. Petitioner procedurally defaulted on the first claim raised in his habeas petition. *See White v. Godinez,* 192 F.3d 607, 608 (7th Cir.1999).

### A.     Cause and Prejudice

Where a petitioner has procedurally defaulted on his claims, a federal court will only review such defaulted claims if the petitioner can show: (1) cause for failure to raise the claim, and actual prejudice resulting therefrom; or (2) that refusal to consider the defaulted claim would result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Anderson v. Cowan,* 227 F.3d 893, 899-900 (7th

Cir. 2000). Petitioner does not allege that a potential miscarriage of justice might ensue should this court fail to hear his claims, but instead, insists he can show cause for his procedural default. In a rather circular fashion, Petitioner argues that his failure to claim ineffective assistance in his attorney's failure to raise, *inter alia*, Petitioner's organic brain dysfunction and IQ of 76, was itself caused by Petitioner's organic brain dysfunction and IQ of 76. As additional cause for his procedural default, Petitioner relies on his status as a *pro se* litigant at the time of his post-conviction petition, the fact that he was unaware of his low IQ and his brain dysfunction when he prepared his post-conviction petition, and the fact that he was unaware that such evidence could have been offered in mitigation.

A showing of cause in this context requires more than offering a reason or explanation; it also requires Petitioner to show that "some objective factor external to the defense" precluded him from pursuing his claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986).[5] A factor external to the defense would be, for example, "interference by officials or unavailability of the factual or legal basis for a claim." *Spreitzer v. Schomig*, 219 F.3d 639, 647-48 (7th Cir. 2000), *quoting Barksdale v. Lane*, 957 F.2d 379, 385 (7th Cir. 1992). Petitioner, however, has offered no objective factors that would explain his default.

---

[5] In *Murray,* the Court considered whether a constitutionally competent defense counsel's inadvertent or ignorant failure to raise a substantive claim of error constituted cause for procedural default. *Murray*, 477 U.S. at 488. The Court held that to show cause, a defendant must establish either that counsel's performance was constitutionally insufficient or that some objective factor external to the defense prevented counsel from complying with state procedure. *Id.*

First, as Respondent correctly pointed out, Petitioner's *pro se* status in preparing his post-conviction petition does not, in itself, constitute cause excusing a default. *See Barksdale v. Lane*, 957 F.2d 379, 386 (7th Cir. 1992); *see also Henderson v. Cohn*, 919 F.2d 1270, 1272 (7th Cir. 1990) (petitioner's "failure to act or think like a lawyer cannot be cause for failing to assert a claim.") Similarly, Petitioner cannot rely on his alleged low IQ, limited reading skills or ignorance of the law as cause for the default. *Henderson*, 919 F.2d at 1272 (finding persuasive and following the long line of cases holding that "illiteracy does not constitute cause for a procedural default"); *Wright v. Greer*, 27 F.3d 570 (7th Cir. 1994) (ignorance of the law does not constitute sufficient cause to preclude procedural default); *Smittie v. Lockhart*, 843 F.2d 295, 298 (8th Cir. 1988) (limited educational background not sufficient cause for failing to pursue state court remedies); *Vasquez v. Lockhart*, 867 F.2d 1056, 1058, (8th Cir. 1988) (lack of familiarity with English language and United States court system do not establish cause); *United States ex rel. Stewart v. Ragen*, 231 F.2d 312, 314 (7th Cir. 1956) (limited education, failure to understand legal procedure, and prison rule prohibiting inmates from helping each other prepare legal proceedings do not excuse failure to exhaust state remedies). Furthermore, as the Seventh Circuit distilled from the Supreme Court's rationale in *Murray*, the only lack of knowledge relevant to a showing of cause is a lack of knowledge that results from interference by officials or from circumstances that render the factual or legal basis for the claim not reasonably available. *Crank v. Duckworth*, 969 F.2d 363, 365 (7th Cir. 1992). No inference has been raised, nor does the record give any indication, that officials at any level have

interfered with Petitioner, preventing him from raising his ineffective assistance of counsel claim.

The sole remaining asserted cause of Petitioner's default is his alleged organic brain dysfunction. The court notes, first, that Petitioner does not explain what organic brain dysfunction is, nor does he offer any evidence that he in fact has such a dysfunction, that his alleged dysfunction impairs him in any way, or that he could not have reasonably discovered his alleged brain dysfunction. The Amended Petition contains only two sentences about Petitioner's alleged brain condition: "Harris suffers from organic brain dysfunction, including frontal-lobe dysfunction," and "He has organic brain dysfunction," without any further explanation or discussion. (Petition at 10-11.) In his reply to the Respondent's Answer, Petitioner submits that he has been evaluated by a neuropsychologist and that this evaluation "provides the basis for the . . . allegations concerning Petitioner's mental health and functioning." (Petitioner's Reply to the State's Answer to His Amended Habeas Petition, (hereinafter, "Reply"), at 3.) These assertions, like the statements in the Petition, are so conclusory that the court is uncertain they are even sufficient to require a response: "Recognizing that habeas corpus is an extraordinary remedy . . . courts require that the petition cross some threshold of plausibility before they will require the state to answer. 'A hearing is not necessary if the petitioner makes conclusory or speculative allegations rather than specific factual allegations.'" *Dellenbach v. Hanks,* 76 F.3d 820, 822 (7th Cir. 1996), *quoting Daniels v. United States,* 54 F.3d 290, 293 (7th Cir. 1995); *see also Broadus v. Newkirk,* 66 F.3d 328 (7th Cir. 1995) (district court did not err

when it concluded that nothing in the record provided petitioner with a basis for relief where petitioner asserted his own mental incompetence as cause for the procedural default of his claims, but provided no evidence to support his allegations of incompetence, while the state provided evidentiary support for its position that he was competent). If the vague reference in Petitioner's reply is sufficient to show that he has an organic brain dysfunction, it is only barely so.

Even assuming his showing on this first prong is adequate, however, Petitioner has offered no argument or legal support for the proposition that his alleged condition constituted cause for his failure to raise the ineffective assistance claim. *See Cawley v. DeTella*, 71 F.3d 691, 696 (7th Cir. 1995) (noting petitioner's failure to "provide any precedential support for the claim that depression can constitute 'cause' in the procedural default context," and concluding that depression, in that case, did not qualify as an "external objective impediment" constituting cause for a procedural default). The parties have not suggested what test should apply here, but the court notes the Seventh Circuit's approval of the following standard to determine whether a convicted defendant is mentally competent to waive his appeal rights: "whether [the convicted defendant] has the capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder or defect which may substantially affect his capacity in the premises." *Wilson v. Lane*, 870 F.2d 1250, 1253 (7th Cir. 1989). This standard does not fit perfectly with the present scenario where the court is called on to determine whether Petitioner's alleged brain dysfunction

13

rendered him incapable of presenting the issue before the state courts. Absent any other proposed standard, the court refers to the *Wilson* standard in reaching the conclusion that, assuming he has some sort of organic brain dysfunction, the fact that Petitioner was able to single-handedly prepare a voluminous, sixty-three page post-conviction petition, raising a wide spectrum of legal claims, suggests Petitioner would not prevail on any sort of mental incompetence theory. Petitioner's alleged dysfunction clearly did not "substantially affect his capacity in the premises" of pursuing his post-conviction petition, and does not constitute cause for his procedural default of the ineffective assistance claim.[6] *See id.* Because Petitioner has not established cause excusing the procedural default of his ineffective assistance of counsel claim, the court does not reach the question of whether he suffered actual prejudice.

In his Amended Petition, Petitioner relies heavily on *Williams v. Taylor*, 529 U.S. 362 (2000), but that case does not alter this court's analysis. In *Williams*, the Supreme Court held that the Virginia Supreme Court had erred in its application of the *Strickland v. Washington*, 466 U.S. 668 (1984) standard for evaluating claims of ineffective assistance of counsel. The Virginia Supreme Court incorrectly determined that the *Strickland* test had been, in some way, modified or supplanted by *Lockhart v. Fretwell*, 506 U.S. 364 (1993), and applied the test, as erroneously modified, to Williams' claims of ineffective assistance of counsel. *Id.* at 391. Because the Virginia

---

[6] The court does not hold here that an organic brain dysfunction could never amount to cause for a procedural default, but rather, that Petitioner has made no such showing here.

court had evaluated Williams' claims on the merits, the Supreme Court reviewed its rationale to determine whether the court's decision was either "contrary to, or involved an unreasonable application of, clearly established Federal law," and determined it failed both of those standards. *Id.* Like Petitioner, Williams alleged that his counsel was ineffective at the sentencing phase of his trial, at which the death penalty was imposed. *Id.* at 393. Williams established in the habeas proceedings that his counsel did not begin preparing for the sentencing phase of the trial until a week before the trial, that counsel did not investigate the extensive records revealing Williams' "nightmarish" childhood because he thought state law barred access to those records, that counsel failed to introduce available evidence that Williams was "borderline mentally retarded," that counsel did not seek prison records or testimony from prison officials establishing that Williams was a well-behaved and helpful inmate, and that counsel neglected to return a phone call from a certified public accountant who had frequently visited Williams and volunteered to testify about how well Williams functioned in the structured environment of the prison. *Id.* at 395-96. Finding counsel's performance, when properly evaluated under the *Strickland* standard, unreasonable and prejudicial to Williams, the Supreme Court found that the entire postconviction record raised "a reasonable probability that the result of the sentencing proceeding would have been different" if counsel had argued the significance of the available mitigating evidence, and reversed and remanded for further proceedings. *Id.* at 395-99.

A crucial and dispositive distinction between *Williams* and Petitioner's case is

that in *Williams*, the petitioner did not default his claim of ineffective assistance of counsel, and thus, the Court in *Williams*, unlike this court, was actually able to consider the merits of that claim. This court may not even reach the ineffective assistance argument without a showing of cause and prejudice. In any event, where Petitioner has failed, even with the benefit of yet another attorney, to provide any evidence of the alleged dysfunction, his sentencing counsel's failure to discover and raise it in mitigation hardly smacks of assistance falling below a reasonableness standard like that alleged in *Williams*.

Petitioner also charges that his counsel was ineffective for failing to raise evidence of his difficult and violent childhood, evidence the Supreme Court found compelling in *Williams*. Petitioner submitted evidence that when he was an infant, he was placed in foster care for a few years, and then shortly after returning to his mother, he saw his stepfather shoot his then-pregnant mother. The court will not attempt to determine the potential traumatic impact such an event might have had on Petitioner, nor will it try to re-create what the jury might have done with this information. The court notes, however, that there is a significant distinction between counsel's alleged failure here and that at issue in *Williams*. The weight of the allegations leveled against counsel in *Williams* amounted to an almost total failure to investigate: counsel failed to seek and gather plentiful, readily available evidence. *See id.* at 395-96. In the present case, Petitioner acknowledges that at the re-sentencing hearing, counsel introduced documentary evidence, including disciplinary and educational records and a letter from Petitioner's minister, as well as the testimony of

four mitigation witnesses, and Petitioner's own statement. (Petition at 8.) One of the mitigation witnesses was Petitioner's mother. If the shooting event Petitioner witnessed was so traumatic to Petitioner that it reduces his moral culpability in the murder of Emma Hopkins, this court would expect that Petitioner's mother, or Petitioner himself, could have brought it to the attention of counsel. In any event, counsel did inquire into Petitioner's childhood: Petitioner's mother testified that Petitioner had never given her "any problems as a child when he was growing up." (Petition at 8.) How far counsel delved into the issue of Petitioner's childhood, the court does not know. But it is clear that Petitioner does not allege a failure to investigate comparable to that alleged in *Williams*, a case involving a near complete failure to investigate. The result in *Williams,* both on the merits and because of its different procedural posture, is of no help in Petitioner's effort to mount a "cause and prejudice" showing.

## B.    Evidentiary Hearing

Petitioner urges this court to grant him an evidentiary hearing to determine whether his alleged brain dysfunction constitutes an "objective factor external to the defense" that would excuse the procedural default of his ineffective assistance of counsel claim. *See Murray*, 477 U.S. at 488. Section 2254(e)(2) provides that, where a petitioner "has failed to develop the factual basis of a claim in state court proceedings," a federal court shall not conduct an evidentiary hearing on the claim unless: "(A) the claim relies on (i) a new, rule of constitutional law . . . that was previously unavailable . . . or (ii) "a factual predicate that could not have been

previously discovered through the exercise of due diligence; and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found [Petitioner] guilty of the underlying offense." 28 U.S.C. § 2254(e)(2)(A) & (B). According to the terms of its opening clause, this statute only applies to petitioners who have "failed to develop the factual basis of a claim in state court proceedings." *See Williams v. Taylor*, 529 U.S. 420, 430 (2000). Therefore, if a petitioner failed to develop the facts in state court, the federal court will only grant an evidentiary hearing if the petitioner's claims meet the requirements of sections A and B of § 2254(e)(2). *Id.*

Petitioner's ineffective assistance claim does not meet the criteria of section A of § 2254(e)(2) because, in that claim, Petitioner does not suggest that a new rule of constitutional law is at issue, and the factual predicate of his claim (his alleged brain dysfunction) existed, if at all, long before he filed his habeas petition. Therefore, if § 2254(e)(2) applies here, the court may not grant an evidentiary hearing. Whether this section applies turns on whether Petitioner "failed to develop the factual basis" of this claim in state court. In *Williams*, the Supreme Court interpreted the phrase "failed to develop the factual basis of a claim" to mean that the claim was not developed because of a lack of diligence, or a greater fault, attributable to the petitioner. *Williams*, 529 U.S. at 432. The Seventh Circuit further elaborated that "'failure' implies omission – a decision not to introduce evidence when there was an opportunity, or a decision not to seek an opportunity." *Burris v. Parke*, 116 F.3d 256, 258 (7th Cir. 1997). As previously noted, Petitioner prepared a lengthy post-conviction petition in

which he raised copious claims, at least seventeen of which alleged ineffective assistance of counsel. Where Petitioner had the wherewithal to come up with claims of every ilk filling more than sixty pages in his post-conviction petition, the court has no reason to believe that Petitioner could not have questioned his own mental capacity as the basis for yet another claim. Petitioner pursued many avenues in his post-conviction petition, but his own mental capacity was one he chose not to pursue. Accordingly, Petitioner failed to develop the factual basis of this claim and § 2254(e)(2)(B) precludes the court from granting an evidentiary hearing.[7]

## II.   Double Jeopardy

In his second claim, Petitioner argues that, in instructing the jury on predicate felonies that support the felony murder charge, the trial court violated the double jeopardy clause of the Fifth Amendment. Petitioner pursued this claim through one full round of state court proceedings, and accordingly, the claim is not procedurally defaulted. A stringent standard of review awaits those claims that survive the procedural prerequisites, however. As noted earlier, under §§ 2254, a federal district court must deny habeas review for any claim the state court addresses on the merits

---

[7]      The court also considers it noteworthy that while Petitioner claims to have a brain dysfunction that makes him less morally culpable for killing Ms. Hopkins, his conduct appears to belie the notion that any brain dysfunction he may have rendered him less capable of appreciating the morally depraved nature of his actions. Petitioner hid the victim's body after strangling her. He then tried to further cover his tracks by calling her home and leaving a message on her phone answering machine in an attempt to avoid being suspected of the crime, and probably also to fabricate a plausible reason for having her car. This conduct does not strike the court as that of someone incapable of forming rational plans, or incapable of appreciating the moral depravity of these crimes and recognizing the consequences.

unless that state decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. §§ 2254(d)(1); or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. §§ 2254(d)(2). The "contrary to" provision refers to questions of law, and on such questions, a federal court makes a *de novo* review. *See Lindh v. Murphy*, 96 F.3d 856, 869 (7th Cir.1996) (en banc), *rev'd on other grounds*, 521 U.S. 320 (1997). The "unreasonable application" exception pertains to mixed questions of law and fact. *Id.* at 870. A state court's application of Supreme Court precedent is reasonable if it is "at least minimally consistent with the facts and circumstances of the case," or "if it is one of several equally plausible outcomes." *Boss v. Pierce*, 263 F.3d 734, 742 (7th Cir. 2001) *quoting Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir.1997), and *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir.1997). Even an incorrect application of Supreme Court precedent is not necessarily unreasonable. *See Hough*, 272 F.3d at 890. For purposes of habeas review, the state court's factual findings are presumed to be correct. *See* 28 U.S.C. §§ 2254(e)(1). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id.*

Petitioner argues that because the trial judge had already directed a verdict in Petitioner's favor on armed robbery of the victim's purse, the trial judge violated Petitioner's double-jeopardy and due-process rights by instructing the jury, over Petitioner's objection, to consider armed robbery as a predicate for the felony murder charge. Petitioner maintains that beginning with jury selection and continuing

through closing arguments, the jurors heard about armed robbery involving the victim's purse but never heard any mention of armed robbery of the victim's automobile. Petitioner believes, therefore, that during deliberations, jurors considered a charge against Petitioner that had previously been adjudicated, thus violating his double-jeopardy and due-process rights.

The Illinois Supreme Court considered the merits of Petitioner's argument on direct appeal, and held that the jury instructions did not violate double jeopardy. *People v. Harris*, 132 Ill. 2d 366, 392-93, 547 N.E.2d 1241, 1252 (1989). The Supreme Court emphasized that "[t]he felony murder count predicated on armed robbery did not specify the proceeds of the robbery." *Id.* at 392; 547 N.E.2d at 1252-53. It further noted the trial judge had stated that he believed "the evidence was sufficient to show that the defendant had robbed the victim of her automobile." *Id.*; 547 N.E.2d at 1253. The Supreme Court found no indication that "the predicate conduct for felony murder (taking the victim's car) was the same conduct alleged in the charge on which the trial judge had directed a verdict in the defendant's favor (taking the victim's purse)." *Id.*; 547 N.E.2d at 1253. Therefore, the Supreme Court, concluded that any error "pertained not to a purported retrial on conduct for which the defendant had previously won an acquittal, but rather to the failure of the indictment to specify the conduct underlying the count charging felony murder predicated on armed robbery." *Id.* at 393; 547 N.E.2d at 1253.[8] Thus, the Supreme Court rejected Petitioner's double jeopardy

---

[8] The Illinois Supreme Court did not consider whether there might have
(continued...)

claim on its merits.

Notably, Petitioner himself has not argued that the Illinois Supreme court's decision was either contrary to or an unreasonable application of Federal law. Absent such a showing, this court may not reach the merits of his claim. Nor does this court believe such a showing could be made here. As long as the state provided evidence sufficient to prove an armed robbery with elements other than those pertaining to robbery of the purse, then Petitioner's double-jeopardy rights were not violated. *United States v. Dixon*, 509 U.S. 688, 696-97 (holding that the "same elements" test, under which, if each offense contains an element not in the other, they are not the same offense and do not violate double jeopardy, governs any double-jeopardy inquiry in multiple punishment and multiple prosecutions contexts).

Furthermore, even if the trial judge erred by giving jury instructions that failed to specify the proceeds of the armed robbery upon which the felony murder count was predicated, any such error was harmless. In *Brecht v. Abrahamson*, the United States Supreme Court stated that trial-type constitutional error, which occurs during presentation of the case to the jury, is subject to a harmless-error analysis. 507 U.S. 619, 629 (1993). This analysis includes consideration of the error in context of all other evidence presented to determine the effect the error might have had. *Id.* On habeas review of constitutional error, an error is harmless unless it had a "substantial and

---

[8](...continued)

been an error with the indictment because Petitioner did not make that objection at trial, and did not raise the issue before the Illinois Supreme Court. *Id.*; 547 N.E.2d at 1253. Neither did Petitioner challenge the indictment in his Amended Petition.

injurious effect or influence in determining the jury's verdict." 507 U.S. at 637 (citing the standard enunciated in *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

Petitioner argues that if the trial judge erred in this case by "permitting a charge to go to a jury on an unconstitutional theory of guilt, one promoted in closing argument by the prosecutor," then the error is "structural," and the *Brecht* harmless error standard should not apply. (Pet'r Reply at 5.) The court disagrees. The Supreme Court has recognized that most constitutional errors can be harmless and has applied the harmless error standard to a wide variety of constitutional errors; the common thread in these decisions is that the errors occurred in the presentation of the case to the jury, and could be quantitatively assessed in light of all of the evidence presented to the jury. *See, e.g., Arizona v. Fulminante*, 499 U.S. 279, 306-07 (1991) (listing numerous Supreme Court cases in which constitutional errors, including many made with respect to jury instructions, were subject to harmless-error analysis). This is precisely the type of error Harris claims here. Supreme Court precedent leaves no doubt that Petitioner's double jeopardy claim is properly subject to harmless-error analysis.[9]

---

[9]     Petitioner also argues that the error cannot be considered "harmless" because one or more jurors might possibly have convicted Petitioner based on an unconstitutional theory of guilt. The court disagrees. Petitioner's argument misconstrues the harmless-error analysis. The analysis requires that the habeas court consider the error in context of all the evidence presented at trial. *Brecht*, 507 U.S. at 629. Here the jury heard overwhelming evidence that Petitioner kidnapped, sexually assaulted, and brutally murdered the victim and then took her car. On this record, it does not seem plausible that a juror might have pinned the murder verdict on the relatively scant evidence supporting armed robbery of the purse, and not have been at

(continued...)

23

Under the harmless error standard, the trial judge's alleged error furnishes no basis for a writ of habeas corpus. Under Illinois law, a general verdict of guilty, as was given in this case, is "presumed to be based on any good count in the indictment to which the proof is applicable." *People v. Rodriguez*, 169 Ill. 2d 183, 189, 661 N.E.2d 305, 308 (1996). Moreover, a presumption exists that the jury found the defendant guilty of intentional murder when it was instructed on intentional, knowing, and felony murder arising out of a single transaction. *People v. Parker*, 317 Ill. App. 3d 845, 852, 740 N.E.2d 485, 492 (1st Dist. 2000). At trial, Petitioner was charged not only with felony murder predicated on armed robbery, but also with intentional murder, knowing murder, and felony murder based on aggravated criminal sexual assault and aggravated kidnapping. Thus, the presumption arises under Illinois law that the verdict of murder could have applied to any one of the provable murder charges in the indictment, and that it ultimately applied to intentional murder, the most serious of those. Stated another way, even if the trial court erred, the error did not substantially influence the jury's guilty verdict, because that verdict is presumed to have been based on intentional murder, rather than on felony murder.

_____

(...continued)
least equally moved to convict Petitioner based on one of the several other felony counts.

Petitioner argues in the alternative that the harmless-error standard should not be applied where the error involves the prosecutor's "egregious misconduct" of having intentionally argued to the jurors a theory of guilt that he knew to be impermissible. There is no basis, here, however, to suggest that the prosecutor intended to mislead the jury. In any event, Petitioner's constitutional claim alleges error by the trial judge, not the prosecutor.

Petitioner has failed to show that the state court's decision was contrary to or involved an unreasonable application of Federal law. Furthermore, Petitioner did not show that the trial judge erred in his jury instructions, or that, if the judge erred as alleged, the error was more than harmless.

## CONCLUSION

Petitioner's claim for habeas relief is denied.

ENTER:

Dated: January 8, 2002

REBECCA R. PALLMEYER
United States District Judge